James J. Crisona, J.
Application by Eleven Brothers Realty Corp. for an order, pursuant to section 21 of the Membership Corporations Law, confirming two mortgages heretofore made by the Institute for Special Education, Inc., a dissolved membership corporation (hereinafter called “ Institute ”).
Both mortgages were made with the approval of the Supreme Court, but some question has been raised as to the validity of those court orders. Hence, this application to confirm the mort *202 gages. Such procedure is authorized by section 21 of the Membership Corporations Law.
On March 5,1956, a group of public-spirited citizens organized the Institute with the avowed purpose of building a school to provide facilities for special guidance, training and education of mentally and emotionally handicapped children on a nonprofit, nonsectarian and self-sustaining basis.
Shortly thereafter the Institute acquired a parcel of real property 180 feet wide and 300 feet deep on Broad Channel Drive in Arverne, Queens County. By February, 1958 the Institute had built a two-story brick and steel school building at a cost of approximately $850,000.
In order to finance construction of the school, the Institute had borrowed money. A first mortgage in the sum of $400,000 was made to the East New York Savings Bank. A second mortgage in the sum of $125,000 was made to two private individuals. Both of these mortgages had been made with leave of the court and no one has questioned the validity of either of these mortgages.
The school began operation on February 17, 1958. Unfortunately because of financial difficulties, it was forced to close approximately nine months later, on November 20, 1958.
The first and second mortgagees threatened foreclosure and various banks threatened suit on loans which they had made to the Institute. In this state of affairs, the board of trustees of the Institute, at a meeting held on December 10, 1958, unanimously voted to borrow $60,000 from the petitioner to be secured by a third mortgage. An application for leave to make such a mortgage was submitted to and approved by this court and an order to that effect was granted on December 15, 1958. The third mortgage was executed by the Institute on December 19, 1958. The Institute received from the petitioner $60,000 which it used to pay off its most pressing debts and the installments due on its other two mortgages.
In time, further installments became due on the first and second mortgages and foreclosure was again threatened. In order to maintain the Institute’s equity in the property and “ to maintain a healthy climate during negotiations for the sale ” of the property to the City of New York, the Institute’s board of trustees on September 29, 1959, unanimously voted to borrow an additional $61,000 from the petitioner to be secured by a fourth mortgage. An application for leave to make such a mortgage was granted by this court on October 13, 1959. The fourth mortgage was executed by the Institute on October 14, *203 1959, and it received a total of $61,000 from the petitioner, $26,000 of which had been advanced even before the mortgage was authorized or executed. The proceeds of this mortgage were also used to pay mortgage installments and other pressing debts of the Institute.
Between the making of the third and fourth mortgages, the trustees commenced negotiations with the City of New York and others to sell its property. On January 11, 1960, the Institute executed a contract to sell the property to the City of New York. Leave to sell was granted by this court on March 2, I960;
During the course of the proceeding to sell the Institute’s real property and in a subsequent proceeding to dissolve the Institute, the validity of the third and fourth mortgages was questioned by some of the creditors on the grounds (1) that such mortgages had not been authorized by two thirds of the trustees and (2) that the Institute was insolvent at the time it made each of the mortgages and had not given notice to creditors as is required in the case of an insolvent corporation. (Membership Corporations Law, § 21; General Corporation Law, § 53.)
The court held a hearing with respect to these issues. The evidence adduced at that hearing shows that at each of the meetings of the trustees when the resolutions to make the new mortgages were approved, more than two thirds of the trustees were present and the vote in favor of the resolutions was, in each case, unanimous. The Institute’s minutes indicated that some of the trustees had sent in a proxy vote. At the hearing, however, several of the trustees testified that while they had originally sent in a proxy because they were not sure that they would be able to attend the meetings, they, nevertheless, did manage to arrive at the meetings although late and they voted in person for the resolutions. This court, therefore, finds that each of the resolutions was approved by at least two thirds of the trustees.
In the proceeding to dissolve the Institute, which was brought in April, 1960, the petition alleged that the Institute was then insolvent. From this, some of the creditors infer that it might have been insolvent in December, 1958 or in October, 1959 when the applications for leave to execute the third and fourth mortgages were made. Obviously no such inference can logically be drawn. Whether the Institute was insolvent on any date is a question of fact which cannot be presumed from later insolvency. Some presumption might arise if a state of insolvency had preceded the applications for leave to mortgage, under the *204 rule that a state of facts, once proved to exist, may be presumed to continue. But, here, the insolvency occurred after the mortgages had been made.
In order to settle any doubt about this question, the present proceeding was brought to confirm the third and fourth mortgages as if they had been made without prior court approval. All creditors received notice of this application.
The evidence shows that when the third and fourth mortgages were approved by the court and made by the Institute, its assets exceeded its liabilities and the Institute was solvent as it alleged in each petition for leave to mortgage. The land was reasonably worth $90,000. The building, which was newly built, had cost $850,000 and was still worth that amount. The equipment, also new, had cost $85,000. Thus the value of the property when the school opened in 1958 was $1,025,000.
When the third mortgage was made, the Institute’s liabilities consisted of a first mortgage of $400,000, a second mortgage of $125,000 and unsecured debts of $350,000. Thus, its total liabilities at that time were $875,000.
When the fourth mortgage was made, the first mortgage was still $400,000; the second mortgage was still $125,000; the third mortgage was $60,000, but the unsecured debts had been reduced by $50,000 to the sum of $300,000. Thus, its liabilities were then $885,000. In both cases, the Institute’s assets exceeded its liabilities. The increase in liabilities by the making of the mortgage in each case was offset by a corresponding credit in the asset column of the cash received as the proceeds of the mortgages.
The court finds that the Institute was solvent at the time it made both the third and fourth mortgages.
The evidence further shows and the court finds that there were no bonuses or discounts given in connection with either of these mortgages; that the proceeds thereof were used to pay interest and installments due on the prior mortgages and other debts ; that if funds had not been raised by means of these mortgages, the first and second mortgages would have been foreclosed and, in all likelihood, the unsecured creditors would have received nothing. The making of the third and fourth mortgages preserved some equity in the property for the benefit of the general creditors. The application to confirm the third and fourth mortgages is granted.